In the Matter of the Probate of the Will of LEWIS A. WALLACE, Deceased.

Surrogate's Court, New York County, August 9, 1944.

*Edmond A. Hanrahan* for Leonhard A. Keyes, for motion.

*Frederick Zissu* for Mabel Wallace, opposed.

FOLEY, S.  In this contested probate proceeding objections were filed by the widow of the testator.  The proponent moves to strike out the notice of appearance filed on her behalf upon the ground that she is not a person entitled to file objections under the provisions of section 147 of the Surrogate's Court Act.  In general, the proponent contends that the widow released any interest in her husband's estate (except a fixed percentage of his net estate) by a separation agreement and by certain subsequent agreements of modification.

The widow asserts her right to contest by virtue of the fact that she was appointed executrix and given the whole estate of the testator under a prior will.

The motion to strike out the appearance is granted.  The Surrogate holds that the widow, because of the agreements made by her, has no legal status to attack the propounded instrument.  The parties were married in 1907.  The prior will was executed in 1916.  The parties separated and a formal separation agreement was entered into on September 10, 1931.  In it various financial provisions were made by the husband for the wife.  They included an agreement on his part to pay the sum of $20,000 yearly for the support of the wife and their four children for a period of approximately four years, until March 1, 1935.  Thereafter a modified allowance was to be paid by the husband at the rate of 40% of his annual net income until the date of his death.  All of the children are now of age and they have consented to the probate of the propounded paper.

The testator had been connected with the insurance firm of Johnson & Higgins.  In 1941 he retired from active business and was allowed an annual pension of $10,000, which was to continue for a period of nine years.  The altered financial status of the husband led to the making of the first modified agreement in 1941.  It recited that since the only major source of income

was his pension, and since all of the children were then of age, the husband would assign to the wife certain allowances out of the Johnson & Higgins' pension moneys at the rate of $3,000 a year to the time of his death. The agreement also carried with it an assignment to the wife of the sum of $4,000 a year out of such pension moneys after the death of the husband. The testator executed the assignment required by this modifying agreement and thereafter the fixed payments were made by Johnson & Higgins direct to the wife.

Under the original separation agreement of 1931, the testator covenanted to bequeath to his wife by his last will 40% of all his property, "including as a part thereof any gifts or other disposition of his property, other than for an adequate and valuable consideration, made after the date of this agreement." That provision was modified by the 1941 contract whereby, because of the assignment to her of 40% of the pension moneys which would accrue after the death of the husband, she waived any right which she might have to a participation in any of the so-called Johnson & Higgins' payments. In this modifying agreement she retained her right to enforce the husband's promise to bequeath to her 40% of the other assets of his net estate.

Further confirmation of the true understanding between the parties is contained in a letter dated January 9, 1942, signed by both husband and wife, which, in substance, restated the modified agreement of 1941, the relinquishment by the wife of any claim against the Johnson & Higgins' moneys in the estate, and the agreement to give to her by will 40% of his other net assets.

The propounded will was executed on January 2, 1942. It recited the making of the separation agreement of 1931 and the modifying agreement of 1941.

It is conceded by counsel for the proponent that the wife is entitled to receive the fixed percentage of the net assets other than the pension moneys.

It is an elementary rule of probate law that a person cannot contest a will unless he has a financial interest, either individually or as fiduciary, in the outcome of the litigation, or would gain by a denial of probate. (*Matter of Cook*, 244 N. Y. 63; *Matter of Davis*, 182 N. Y. 468; *Matter of Hoyt*, 55 Misc. 159, affd. 122 App. Div. 914, affd. 192 N. Y. 538.) "An interest resting on sentiment or sympathy, or on any basis other than the gain or loss of money or its equivalent, is not sufficient, but any one who would * * * become entitled to property by

the probate of a will, is authorized to appear and be heard upon the subject. Conflict of jurisdiction and delay in administration may thus be avoided." (*Matter of Davis, supra,* p. 472.)

It is a further rule of probate law that a person who might otherwise be entitled to contest may waive and renounce that right by an agreement made in the lifetime of the decedent. (*Matter of Cook, supra.*) There is a part of that rule which applies particularly to the situation here and that is that either spouse may renounce any interest in the estate of the other spouse, or may agree to accept a limited share of the estate of the other, or may waive the right to take under a prior will by a subsequent separation agreement, or may renounce by agreement any statutory right to participate in the estate of the other spouse, such as rights accruing by intestacy or by personal exemptions. (*Matter of Burridge,* 261 N. Y. 225; *Matter of Estate of Young* v. *Hicks et al.,* 92 N. Y. 235; *Matter of Aloysius- Klein,* 121 Misc. 568; *Matter of William Hagen,* 119 Misc. 770, affd. 206 App. Div. 682; *Matter of Browning,* 153 Misc. 564; *Matter of Green,* 165 Misc. 108; *Matter of Markel,* 175 Misc. 570, affd. 261 App. Div. 950.)

Here, the widow, by her covenants, limited herself to a right to participate in the fixed percentage of the net assets, after the payment of debts, administration and funeral expenses and taxes, to the extent of 40% thereof. The pension moneys were excluded. Because of her release of all other rights, the fact that she was named as executrix or individually as sole legatee under the will of December 27, 1916, affords her no right to contest. The agreements of 1931, 1941 and 1942 constituted a voluntary surrender of any rights under the will of 1916. (*Titus* v. *Bassi,* 182 App. Div. 387 · Decedent Estate Law, § 40.)

In *Titus* v. *Bassi,* just cited (*supra*), the parties were married in 1898. The testator executed a will in 1903, in which his wife was made the residuary legatee. In 1911 the husband and wife entered into a separation agreement in which a financial settlement was made for her benefit. In it also the wife waived any interest in the estate of the husband either by will or by intestacy. The widow contended that she was entitled to assert a right to the residuary estate under the prior will. In the face of her agreement the Appellate Division held (p. 394) that the allowance of such a claim would be " inequitable and unjust " and that she was attempting to force his estate " to pay her for what she has already been paid." The court pointed out that under section 39 of the Decedent Estate Law " A conveyance, settlement, deed, or other act of a testator,

by which his estate or interest in property, previously devised or bequeathed by him, shall be altered, but not wholly divested, shall not be deemed a revocation of the devise ''. On the other hand, the court applied to the facts the provisions of section 40, which read, '' But if the provisions of the instrument by which such alteration is made, are wholly inconsistent with the terms and nature of such previous devise or bequest, such instrument shall operate as a revocation thereof, unless such provisions depend on a condition or contingency, and such condition be not performed, or such contingency do not happen.''

It was held that the separation agreement nullified any claims which the widow might have had to any part of the husband's estate and that the prior will had been revoked by the subsequent agreement of husband and wife and by the effective terms of section 40.

A similar conclusion is inescapable here. The separation agreement of 1931 specifically released the husband, '' his executors and administrators '' from any claims against his estate, except the percentage share granted by the original agreement and modified by the subsequent agreements.

In *Matter of Griffith* (167 Misc. 366), Surrogate FEELY reviewed the two contrasting lines of decisions which dealt with agreements which were confined to obligations on the part of the husband during the lifetime of the wife and those which granted benefits under the promise of the husband to the wife for her provision out of his estate after his death. In the former case the right of the wife to attack a will or to take by intestacy is preserved to her. In the latter class of cases it is immaterial whether or not the decedent died testate or intestate, as the widow must look to the agreement for the enforcement of her rights. If she has relinquished them absolutely, none is available to her. If, as here, she has reserved a right to a limited share in the husband's estate, the contract or contracts provide the exclusive formula for her benefit.

The notice of appearance of the widow and the objections filed by her to probate are stricken out.

Submit order on notice granting the motion accordingly.

Submit decree on notice admitting the will to probate.